**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **M.K.-1, M.K.-2, and M.K.-3**

**No. 21-0390** (Logan County 20-JA-42, 20-JA-43, and 20-JA-44)

## MEMORANDUM DECISION

Petitioner Father L.K., by counsel Mark Hobbs, appeals the Circuit Court of Logan County's April 13, 2021, order terminating his parental rights to M.K.-1, M.K.-2, and M.K.-3.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Rebecca E. Mick, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying him a post-dispositional improvement period and in terminating his parental rights without considering a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2020, the DHHR filed a child abuse and neglect petition against the parents based on allegations of drug abuse and prior Child Protective Services ("CPS") interventions. Specifically, the DHHR alleged that the mother presented to the hospital to give birth to M.K.-3 and admitted abusing drugs during her pregnancy and failing to obtain any prenatal care. The mother also admitted to hospital staff that petitioner, the children's father, abused drugs with her. She further indicated that their two older children, M.K.-1 and M.K.-2, were currently in his care while she was in the hospital. A CPS worker met with petitioner and observed that he was visibly impaired, was staggering, and could not focus enough to carry on a conversation. Petitioner

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we will refer to them as M.K.-1, M.K.-2, and M.K.-3, respectively, throughout this memorandum decision.

admitted to the CPS worker that he had used "a little something" that day but did not report which drug(s) he had used. Petitioner conceded that he had a history of drug abuse. Lastly, the DHHR noted that services had previously been provided to the parents in 2018 due to drug abuse.

In April of 2020, the DHHR filed an amended petition against the parents, adding allegations that M.K.-3's umbilical cord blood screen tested positive for amphetamine and methamphetamine. The amended petition additionally indicated that the parents failed to submit to drug screens, as requested by the DHHR, on three separate occasions.

Later in April of 2020, the circuit court held a preliminary hearing wherein the DHHR presented the testimony of the Director of Nursing and Pediatrics, Labor, and Delivery at Logan Regional Medical Center. The director testified that M.K.-3 tested positive for methamphetamine at birth and that the mother admitted to abusing drugs during her pregnancy. Following the director's testimony, the parents requested a continuance and new counsel, which was granted without objection. The DHHR filed a second amended petition in June of 2020, adding allegations that, during the pendency of this case, petitioner twice tested positive for amphetamine and methamphetamine and failed to screen on at least nine occasions.

In October of 2020, the circuit court reconvened the preliminary hearing at which time the DHHR presented the testimony of a CPS worker. According to the CPS worker, the mother admitted at M.K.-3's birth that she and petitioner abused drugs. The CPS worker also testified that, upon investigating the mother's reports, she personally observed petitioner to be visibly impaired while caring for the two older children and that petitioner admitted to abusing drugs that day. A second CPS worker testified that petitioner had submitted to only two drug screens during the proceedings, both of which were positive for amphetamine and methamphetamine. That CPS worker further testified that petitioner failed to maintain contact with her and that she had not heard from him since at least August of 2020. Following this testimony, the circuit court ratified the removal of the children.

The circuit court held an adjudicatory hearing in December of 2020 wherein it took judicial notice of the testimony presented at prior hearings. Petitioner appeared at the beginning of the hearing but left minutes later. His counsel was present to represent him. The DHHR presented the testimony of a caseworker, which established that petitioner tested positive for amphetamine or methamphetamine on three occasions, tested positive for buprenorphine on one occasion, and failed to screen on at least nine occasions. The circuit court incorporated its findings from prior orders and adjudicated petitioner as an abusing parent.

In January of 2021, the DHHR submitted a court report indicating that petitioner was not complying with services and had not submitted to drug screens. Moreover, due to his noncompliance, petitioner was prohibited from visiting with the children. The circuit court also held a dispositional hearing in January of 2021. Petitioner requested new counsel, claiming that the proceedings were never explained to him and that he did not know what he needed to do to regain his parental rights. The circuit court denied petitioner's request for new counsel but, out of an abundance of caution, granted a continuance and ordered petitioner's counsel and the DHHR to meet with petitioner and explain what he was required to do.

2

The DHHR filed a second court report in March of 2021, indicating that petitioner was still not drug screening and that he had not maintained contact with the CPS workers. The circuit court held a dispositional hearing later in March of 2021, during which petitioner requested a post-dispositional improvement period. In support of his motion, petitioner testified that he would participate in services and submit to drug screens. Petitioner stated that he had not consistently submitted to drug screens during the proceedings because he was "bucking up against the system" and felt personally attacked and lied to by the DHHR. Petitioner testified that he would do "anything" to regain custody of his children and that he had entered a medically assisted treatment program that included the use of prescription Suboxone. On cross-examination, petitioner testified that he believed the DHHR profited from removing children from their homes and further claimed that a conflict of interest existed in his case because he had previous sexual relations with one of the CPS workers. Petitioner also blamed his poor participation in the case on the CPS workers and their failure to come to his home to assist him. Petitioner also accused the workers of lying throughout the proceedings. Petitioner acknowledged that he lived in close proximity to the local day report center and the DHHR office and further admitted that he frequently walked past both buildings, but stated he never stopped in either building to submit to any drug screens or request assistance in his case. Following petitioner's testimony, the circuit court denied his motion for a post-dispositional improvement period. The circuit court found that petitioner failed to prove that that he was likely to participate in an improvement period and provided only his self-serving statements that he would comply in support of his motion. The circuit court noted that petitioner was twelve months into the proceedings and had done nothing to regain custody of the children.

Immediately thereafter, the DHHR presented the testimony of a CPS worker in support of the termination of petitioner's parental rights. The CPS worker testified that, since the last hearing, petitioner had done nothing to participate in the proceedings and had not submitted to a drug screen as directed by the circuit court. The CPS worker testified that petitioner failed to take advantage of the opportunities offered by the DHHR and had done nothing to remedy his substance abuse. Following the CPS worker's testimony, the circuit court took judicial notice of all prior testimony presented in the matter.

Ultimately, the circuit court terminated petitioner's parental rights. The circuit court found that petitioner failed to recognize the risk his substance abuse posed to the children and that he was not "forthright" in his testimony to the circuit court. The circuit court found that petitioner did not want to participate in the proceedings or "put in the hard work of attempting to meet the issues that brought [him] here." The circuit court further found that petitioner was "unwilling to see [his] own blame in any of this." Accordingly, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare. Petitioner appeals the circuit court's April 13, 2021, dispositional order terminating his parental rights.[2]

The Court has previously established the following standard of review:

---

[2]The mother's parental rights were also terminated below. M.K.-1 was placed with a foster parent, and the permanency plan for the child is adoption by that foster parent. M.K.-2 and M.K.-3 were placed with a different foster family, and the permanency plan for those children is adoption by that foster family.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying him a post-dispositional improvement period "within eleven (11) months of the filing of the emergency petition removing petitioner's children." According to petitioner, he was denied a post-dispositional improvement period only eleven months into the proceedings, well before the DHHR was required to seek termination of his parental rights.[3] Further, he notes that only three months passed between his adjudication and his dispositional hearing, and argues that he was not afforded an opportunity to participate in any type of improvement period.

This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(3)(B) provides that the circuit court may grant a parent a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

---

[3]West Virginia Code § 49-4-605(a)(1) provides that

[e]xcept as provided in § 49-4-605(b) of this code, the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights:

(1) If a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home.

In his brief on appeal, petitioner largely makes policy arguments regarding drug-abusing parents in abuse and neglect proceedings and completely fails to address the standard for obtaining a post-dispositional improvement period, which requires a parent to establish that he or she is likely to fully comply with the requirements thereof. W. Va. Code § 49-4-610(3)(B). Petitioner's only argument in support of his assertion that he was entitled to an improvement period is his participation in a medically assisted treatment program. Petitioner does not attempt, however, to explain how he could have satisfied this burden in light of his willful refusal to comply with the circuit court's orders regarding his participation in the abuse and neglect proceedings. Here, petitioner failed to submit to numerous drug screens and, when he did screen, tested positive for drugs. Moreover, petitioner failed to maintain contact with his CPS worker, accused the CPS workers of fabricating the allegations against him, and failed to accept responsibility for the effect of his drug abuse on the children. We have previously explained that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Further, petitioner failed to submit any documentation demonstrating that he had, in fact, entered a medically assisted treatment program and testified that he had not participated in the proceedings because he was "bucking up" against the system. Accordingly, petitioner's argument that the circuit court erred in denying him an improvement period because the DHHR was not yet required to seek termination of his parental rights is of no consequence, as petitioner failed to establish that he was likely to fully participate in an improvement period. Given petitioner's failure to participate in services or acknowledge responsibility for his actions, we find no error in the circuit court's decision to deny petitioner an improvement period.

Petitioner next argues that the circuit court erred in terminating his parental rights without considering less-restrictive dispositional alternatives, such as a post-dispositional improvement period. Petitioner argues that he testified at the dispositional hearing regarding his participation in a medically assisted treatment program and that the circuit court did not afford his testimony enough weight.

The evidence presented above likewise supports the circuit court's termination of petitioner's parental rights. While petitioner argues that the circuit court failed to adequately consider his testimony, petitioner failed to take the minimum step of confirming his participation in the medically assisted treatment program. Further, petitioner tested positive for drugs on the few occasions he presented to screen and failed to submit to numerous screens as directed by the circuit court. Indeed, in January of 2021, the circuit court granted petitioner's request for a continuance in order to allow him to meet with the DHHR workers and his counsel to discuss his case and ordered petitioner to submit to a drug screen, but petitioner failed to take these meager steps even in the face of termination. Moreover, petitioner's failure to submit to drug screens prevented him from visiting the children. "We have previously pointed out that the level of interest demonstrated

by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Given petitioner's refusal to acknowledge his ongoing substance abuse, in conjunction with his failure to actively participate in the proceedings and comply with the circuit court's directions, it is clear that there was sufficient evidence upon which to base the circuit court's findings that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare. West Virginia Code § 49-4-604(c)(6) permits the termination of parental rights upon these findings. Further, while petitioner argues that the circuit court should have granted him a post-dispositional improvement period prior to the termination of his parental rights, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 13, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton